**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CIVIL ACTION NO. 4:19-CV-00140-JHM**

**RONALD ANDERSON**                                                                                           **PLAINTIFF**

**V.**

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**                        **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Hartford Life and Accident Insurance Company's ("Hartford") Motion for Judgment [DN 36]. The Court also addresses Plaintiff Ronald Anderson's ("Mr. Anderson") Motion for Judgment on the Administrative Record [DN 37]. Fully briefed, this matter is ripe for decision. For the following reasons, Hartford's motion is **GRANTED**, and Mr. Anderson's motion is **DENIED**.

**I.     BACKGROUND**

**1. Factual History**

Several decades ago, Mr. Anderson suffered a spinal injury while serving in the United States armed forces. [DN 37-1 at 2]. Since Mr. Anderson's discharge in 1987, the Veterans Administration ("VA") has deemed him partially disabled, awarding a 10% service connection for his lumbosacral/cervical strain. [DN 1 at ¶ 8]; [DN 21-6 at 11]. In 2013, he received another 10% service connection for paralysis of the sciatic nerve. [DN 37-1 at 10]. On December 18, 2015, the VA increased Mr. Anderson's service connection by 70% for his major depressive disorder, raising his combined rating to 80%. [DN 1 at ¶ 10]; [DN 36-1 at 3]. As of January 1, 2016, the date that change became effective, Mr. Anderson's VA benefits totaled $1,888.48 per month. [DN 36-1 at 3].

1

Despite his impairment, Mr. Anderson worked at Boardwalk Pipeline Partners ("Boardwalk") for seventeen years. [DN 1 at ¶ 3]. Boardwalk contracted with Hartford to provide benefits to employees under their disability policy (the "Policy"). [*Id.* at ¶ 4]. On January 8, 2016, Mr. Anderson stopped working and applied for short-term disability benefits under the Policy, citing his impairments. [DN 17 at 123]. The parties agree that January 11, 2016, constitutes his "disability date" for any benefit determinations. [DN 36-1 at 3]; [DN 37-1 at 2]. Later that year, on June 7, Mr. Anderson received an Individual Unemployment Adjustment from the VA, which retroactively approved him as disabled, finding him "unemployable." [DN 21-3 at 40].[1] Beginning February 1, 2016, Mr. Anderson began receiving $3,329.03 per month from the VA. [DN 1 at ¶ 12].

In July 2016, Mr. Anderson applied for long-term disability ("LTD") benefits under the Policy. [DN 21-3 at 63]. Hartford approved his request. [DN 17 at 266]. This process required Mr. Anderson to provide Hartford with documentation detailing his VA benefits. After Mr. Anderson supplied these documents, Hartford decided it was entitled to offset Mr. Anderson's VA benefits from his monthly LTD benefits. [DN 1 at ¶ 24]. Mr. Anderson alleges this reduction constitutes both an ERISA violation and breach of contract. [DN 1].

## 2. The Policy

In its provisions covering the calculation of monthly benefits, the Policy provides that Hartford may "deduct Other Income Benefits" from the employee's award. [DN 17 at 25]. Relevant to this case, "Other Income Benefits" include:

---

[1] The parties disagree as to this letter's effect. Mr. Anderson contends it "did not approve [him] as 'unemployable,' but informed [him] that he was entitled to monthly benefits for his Individual Unemployability Adjustment, and those payments would start on February 1, 2016." [DN 39 at 2]. Hartford recognizes that the "VA did not expressly state that it was finding him 'unemployable'" in this letter "but that is its clear implication[.]" [DN 40 at 2].

>the amount of any benefit for loss of income, provided to You or Your family, as a result of the period of Disability for which You are claiming benefits under The Policy. This includes any such benefits for which You or Your family are eligible . . . pursuant to any:
>
>>6) disability benefit from the Department of Veterans Affairs, or any other foreign or domestic governmental agency:
>>
>>>(a) that begins after You become Disabled; or
>>>(b) that You were receiving before becoming Disabled, but only as to the amount of any increase in the benefit attributed to Your Disability.

[*Id.* at 33–34]. Within the Policy, "You or Your means the person to whom this certificate is issued." [*Id.* at 35].

For VA benefits to qualify as "Other Income Benefits," the beneficiary must be "Disabled." [*Id.* at 34]. Elsewhere, the policy defines "Disability" or "Disabled" to mean the individual is "prevented from performing one or more of the Essential Duties of":

1) Your Occupation during the Elimination Period;
2) Your Occupation, for the 24 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
3) after that, Any Occupation.

[*Id.* at 32]. Furthermore, the employee's "Disability must result from":

1) accidental bodily injury;
2) sickness;
3) Mental Illness;
4) Substance Abuse; or
5) Pregnancy.

[*Id.* at 33]. The parties disagree as to how this latter provision affects the broader definition of "Disability."

## II. STANDARD OF REVIEW

"A denial of benefits challenged under § 1132(a)(1)(B) [of ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary

3

discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "If the administrator or fiduciary can show that it has such discretionary authority, a benefits denial is reviewed under the arbitrary and capricious standard." *Frazier v. Life Ins. Co. of N.A.*, 725 F.3d 560, 556 (6th Cir. 2003). Because the parties stipulated that Harford had discretionary authority, the arbitrary and capricious standard applies. [DN 15 at 3]; [DN 17 at 44].

"Review under [the arbitrary and capricious] standard is extremely deferential and has been described as the least demanding form of judicial review." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (quoting *Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1107–08 (7th Cir. 1998)). "This standard requires that [courts] defer to the administrator's construction when the policy vests the administrator with the discretion to interpret the policy." *Seiser v. UNUM President Corp.*, 135 Fed. App'x 794, 797 (6th Cir. 2005). The administrator's "decision must be 'rational in light of the plan's provisions.'" *Helfmann v. GE Group Life Assur. Co.*, 573 F.3d 383, 392 (6th Cir. 2009) (quoting *Cooper v. Life Ins. Co. of N.Am.*, 486 F.3d 157, 165 (6th Cir. 2007)). A court will uphold the determination "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. Metro Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006). When "interpreting a plan, the administrator must adhere to the plain language meaning of its language as it would be construed by an ordinary person." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004) (citing *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 934 (6th Cir. 2000)).[2]

### III. DISCUSSION

---

[2] The Court does not consider the rule of *contra proferentum*, which construes contracts against the drafter. If "the Plan clearly gives the administrator Firestone deference, then *contra proferentum* has no place in reviewing the administrator's decisions." *Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 269 (6th Cir. 2018).

The parties do not dispute the existence of Mr. Anderson's medical conditions or his qualifications for VA and LTD benefits under the Policy. They also recognize that the Policy qualifies as an employment benefits plan under 29 U.S.C. § 1132. The sole issue before the Court is whether Hartford properly classified Mr. Anderson's VA benefits as "Other Income Benefits" under the Policy, warranting a reduction in his LTD benefits from Hartford. Applying the arbitrary and capricious standard, the Court must determine whether Hartford's decision to offset those benefits was "reasonable" based on the Policy's language.

"Courts construe ERISA plans, as they do other contracts, by 'looking to the terms of the plan' . . . ." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 102 (2013) (quoting *Bruch*, 489 U.S. at 113). Mr. Anderson presents three arguments as to why Hartford's interpretation was "unreasonable" under the Policy's language. First, the adjustment was not an "increase" in disability benefits. [DN 37-1 at 11]. Second, any increase cannot be "attributed to [Mr. Anderson's] Disability." [*Id.* at 13]. Finally, even if it was an increase attributed to Mr. Anderson's Disability, Hartford misstated its effective date. [*Id.* at 17]. None of these arguments are persuasive. The Court **GRANTS** Hartford's Motion for Judgment and **DENIES** Mr. Anderson's Motion for Judgment on the Administrative Record.

### A. Conflict of Interest

Initially, Mr. Anderson contends the Court should consider Hartford's conflict of interest in its review. [DN 37-1 at 9]. When a plan administrator evaluates and pays claims, "this dual role creates a conflict of interest[,]" and "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits[.]" *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). Still, such a conflict is "but one factor among many that a reviewing judge must take into account." *Id.* at 116. The

"weight a conflict is due depends on the circumstances of each individual case, and its existence is not enough to change the review of the decision from deferential to *de novo*." *Austin-Conrad v. Reliance Standard Life Ins. Co.*, No. 4:14-CV-00127, 2016 WL 5400366, at *6 (W.D. Ky. Sept. 26, 2016).

Hartford is both "administrator" and "payor." *Glenn*, 554 U.S. at 128. However, Mr. Anderson fails to show how Hartford's duties tainted its decision to offset his benefits. Citing the administrative record, he claims Hartford sought "ways to link his Disability under the Policy with depression[.]" [DN 42 at 14]. None of these passages reveal impropriety. "Therefore, the Court finds that no greater or lesser weight is given to the inherent conflict of interest in the Court's arbitrary and capricious analysis." *Austin-Conrad*, 2016 WL 5400366, at *6.

## B. Was the Adjustment an "Increase" Under the Policy?

Moving on to the substantive arguments, first, the parties dispute the word "increase." Hartford may offset any VA benefits Mr. Anderson was "receiving before becoming Disabled, but only as to the amount of any *increase* in the benefit attributed to [his] Disability." [DN 17 at 34] (emphasis added). If the change was not an "increase," Hartford could not offset Mr. Anderson's VA benefits.

Since the Policy does not define "increase," the Court interprets the word according to its "plain meaning, in an ordinary and popular sense." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998). Defined "increase" means "growth or enlargement." *Increase*, *Black's Law Dictionary* (11th ed. 2019). Per the Policy, it is "the benefit attributed to [his] Disability" that must "grow[ ] or enlarge[ ]." [DN 17 at 34].

Mr. Anderson's benefits show "growth" and "enlargement." Starting January 1, 2016, Mr. Anderson received $1,888.46 per month. [DN 18-3 at 21]. After he stopped working on

January 11, his monthly benefit equaled $3329.03—the official reason being an "Individual Unemployability Adjustment." [*Id.*]. This constitutes an increase.

Mr. Anderson claims the "adjustment was not an increase in his VA disability benefit, but an adjustment based on the change in his overall percentage of service-connected impairments after he was awarded VA disability benefits for depression." [DN 37-1 at 11]. He says "the term 'increase' unambiguously refers to an increased disability rating." [DN 39 at 7]. This interpretation disregards the Policy's text. The language looks to "any increase *in the benefit*" the beneficiary receives without mentioning their "disability rating." [DN 17 at 34]. Mr. Anderson's benefits increased—calling it an "adjustment" does not change that fact. On this point, Hartford reasonably interpreted the policy.

## C. Was that Increase "Attributed" to Mr. Anderson's "Disability"?

Next, even if the change was an "increase," Mr. Anderson argues Hartford cannot offset his VA benefits unless "the benefit [is] attributed to [his] Disability." [DN 17 at 34]. If this requirement is not satisfied, then Hartford cannot reduce Mr. Anderson's benefits.

The parties dispute the term "Disability." As with most ERISA cases, "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Policy defines having a "Disability" and being "Disabled" as being "prevented from performing one or more of the Essential Duties of":

1)   Your Occupation during the Elimination Period;
2)   Your Occupation, for the 24 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
3)   after that, Any Occupation.

7

[DN 17 at 32–33]. The Policy then lists five impairments; that list states an individual's "Disability must result from":

1) accidental bodily injury;
2) sickness;
3) Mental Illness;
4) Substance Abuse; or
5) Pregnancy.

[*Id.* at 33].

Mr. Anderson maintains that the "increase" in benefits must be attributed to the "same disability" that initiated those benefits. [DN 37-1 at 13–16]. "The plain language of the Policy conveys to an ordinary person that a VA increase will only offset their LTD benefits if the increase is attributed to the condition for which they are claiming LTD benefits." [*Id.* at 13]. He interprets the impairment list as showing that "an insured's Disability under the Policy is . . . the specific condition(s) causing that inability to work." [*Id.*]. He claims that his disability is from back pain, and that the increase in his benefits was due to his depressive disorder, thus, it cannot be "attributed" to the previous benefits he received for his back pain.

According to Hartford, "Disability/Disabled" refers to an individual being "prevented from performing one or more of the Essential Duties of his occupation." [DN 36-1 at 9] (internal quotation marks omitted). Hartford maintains that the impairment list simply qualifies the type of disabilities that are covered by the policy. [DN 40 at 4–5]. To Hartford, the increase in VA benefits for Mr. Anderson's depressive disorder can be "attributed" to his "Disability" because that the combination of depression and back pain is what caused him to become unable to "perform[ ] one or more of the Essential Duties of his occupation."

Examining the Policy's text, Hartford's interpretation is rational. Even if Mr. Anderson's arguments raise questions as to the definition of "Disability," under the arbitrary and capricious

8

standard, the Court must "accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Morgan*, 385 F.3d at 992; *see also Anderson v. Emerson Elec. Co.*, 351 F. Supp. 2d 740, 744–55 (W.D. Mich. 2004) ("when there are two reasonable interpretations of the Plan, the Court cannot reverse the [administrator's] determination."). The Court finds Hartford's interpretation of the term "Disability" to be reasonable under the Policy's language.

Thus, applying Hartford's interpretation of "Disability," meaning only a general inability to "perform[ ] one or more of the Essential Duties" of his occupation, Mr. Anderson's increase Mr. Anderson's increase was "attributed to [his] Disability." [DN 17 at 34]. Based on the language of 38 C.F.R. § 4.16(a), Hartford contends that the VA would not have awarded the Individual Unemployability Adjustment without concluding Mr. Anderson was "unable to secure or follow a substantially gainful occupation . . . ." The Court agrees. And because this increase was made because Mr. Anderson could not remain employed, it is connected to his being "prevented from performing one or more of the Essential Duties" of his job. In summary, Hartford reasonably concluded Mr. Anderson's increase was "attributed" to his "Disability."

### D. When Did the Increase Become Effective?

Mr. Anderson's last argument alleges that Hartford incorrectly identified the effective date for his unemployment adjustment. [DN 37-1 at 17]. He posits "Hartford seemingly relied on the February 19, 2016 combined legal effective date of the VA Information Report in assigning the beginning date for the [adjustment]." [*Id.*]. This claim lacks any merit. Nothing in the record suggests Hartford viewed February 19, 2016 as the start date; Hartford's pleadings and the record all show they used January 11 as the effective date and February 1 as the payment start date. [DN 21-3 at 40].

Mr. Anderson proposes January 1, 2016, as when his Individual Unemployability Adjustment became effective since "that is when Mr. Anderson met the percentage requirements for a TDIU rating." [DN 37-1 at 17]. However, the VA only made the Individual Unemployment Adjustment because he was unemployed, which did not happen until January 11, 2016. In short, Mr. Anderson's increase in VA benefits became "effective" on January 11, which is his "disability date." Hartford's analysis was reasonable.

## IV. CONCLUSION

Overall, Hartford's actions were "rational in light of the plan's provisions." *Helfmann*, 573 F.3d at 392. The Policy's language supports a finding that the increase in Mr. Anderson's VA benefits were "Other Income Benefits," meaning Hartford could offset the increase from its disability benefits. Mr. Anderson fails to show Hartford's interpretation and implementation of the Policy were arbitrary and capricious.

For the reasons set forth above, **IT IS HEREBY ORDERED** that Hartford's Motion for Judgment [DN 36] is **GRANTED**. Mr. Anderson's Motion for Judgment on the Administrative Record [DN 37] is **DENIED**. The Court will enter a judgment consistent with this opinion.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

October 29, 2021

cc: Counsel of Record